## JOHN GILLIGAN *v.* THE NEW YORK AND HARLEM RAIL ROAD COMPANY.

In an action for the loss of service of the plaintiff's son, caused by an injury received through the negligence of the defendants' servant; the plaintiff is confined to loss of service before suit brought, together with reasonable compensation for the expenses incurred and care bestowed by himself and servants during the illness of the child, and cannot recover for the prospective loss during the minority, unless he has declared specially therefor.

The rule varies from that which applies where the suit is brought by the child himself. Injury to the person is there the *gravamen* of the action. When the parent sues, it is the cause only of the loss, and the loss of service forms the gist of the action. To allow to him a recovery for prospective loss not alleged, would violate the rule, that a party can only recover *secundum allegata*.

The parent, in such cases, cannot recover, if the negligence of the son concurred in causing the injury.

In determining whether or not the son was negligent, the jury may consider all the circumstances affecting his conduct at the time, including the acts of third persons, and of servants of the defendant, other than the one to whose negligence the injury is attributed in the complaint; although such acts cannot be made a ground of recovery.

Although, after two trials, with a like finding by the jury, the court would not set aside

the verdict *merely* because the evidence is deemed greatly preponderating against it, upon a question of negligence; yet, the fact that the jury has also found, on a a question of damages, in decided opposition to the views of the court upon the testimony, forms a coincidence, which strengthens the apprehension of bias and partiality, and may require interference, even where, upon either ground alone, it might have been refused.

THIS was a motion for a new trial made by the defendants at the general term, in a suit commenced under the old system of practice, and in which the plaintiff had twice recovered a verdict.    The opinion contains the facts.

*Charles W. Sandford*, for the defendants.

*Theodore E. Tomlinson*, for the plaintiff.

BY THE COURT.    WOODRUFF, J.—The plaintiff herein brought his action for the alleged loss of service of his son, who was injured by being run over by a rail road car, in the charge of a servant of the defendants, whose negligence in driving the horses was the alleged cause of the injury.    The jury rendered a verdict for the plaintiff for $550 damages.    The action having been brought before the enactment of the code of procedure, a motion for a new trial is now made before the full bench, in conformity with the former practice of this court.

There appears but one exception to the rulings of the judge before whom the action was tried, and that exception arises as follows:

It appeared by the evidence, that immediately before the injury, the boy was upon the steps or platform of one of the defendants' large cars, at their station, near 27th street, which car was slowly moving southerly, not for carrying persons down to the lower part of the city, but for the purpose of being turned off on a switch, and left at the station.

That the defendants' superintendent (Murphy) ordered the boy off, and some of the witnesses say, *struck* the *boy* with a stick or rattan, others that he merely *struck at him*.    To avoid Murphy, the boy ran from him off the platform, towards the track of an up going car, at that moment passing, and, against

either the horses or the platform thereof, fell, and was run over, and his ankle was crushed, so that amputation became necessary. The declaration alleged negligence of the driver of the up going car, as the sole cause of the injury.

The judge, after having charged the jury, in a manner satisfactory to the defendants, namely, among other things, that if the injury was caused by the misconduct or negligence of the boy, the plaintiff cannot recover; and if negligence on the part of the driver, and carelessness on the part of the boy, both concurred in causing the injury, the defendants are not liable; and that if, by the use of ordinary care and skill, in driving the up going car, the driver could not have avoided the accident, the plaintiff cannot recover; then added: "If the injury was caused by the misconduct or negligence of the defendants' superintendent, (Murphy,) in improperly driving the boy from the large car, the plaintiff cannot recover in this action, because no such misconduct or negligence is charged in the complaint. "But if the jury should find that the injury was caused by the negligence of the driver of the up going car, then it might be material to consider what occurred between Murphy and the boy, in reference to the question whether there was carelessness or neglect on the part of the boy, concurring with the negligence of the driver, in producing the injury. "For if the boy had reason to believe that the large car was going down with passengers, and without any want of prudence got upon it in good faith, with a view to ride and pay his fare, and Murphy drove him off at an unhappy moment, just as a car was passing up, which was seen by neither of them, and the boy, intimidated thereby, ran to avoid him, these circumstances might properly be considered by the jury in determining whether want of care was attributable to the boy in what ensued. "But it is in this view only that the conduct of Murphy is material, for his misconduct, (if any there was,) either willful or negligent, could be no ground of recovery in this action."

The defendants' exception applies to so much of this part of the charge as permitted the jury to consider the circumstances

mentioned, in determining whether want of care or prudence could be attributed to the boy.

It seems to me, that the portion of the charge to which the exception is taken is so plainly reasonable and just, that no reasoning about it can make it more clearly so. It is, in effect, instructing the jury, that in determining whether the boy was negligent or not, they may take into view all the circumstances in which he acted. That if he had been guilty of no want of prudence down to the moment when he was approached by Murphy, (the defendants' superintendent,) the inquiry was: Did he act prudently in running from the car when ordered off, struck, or struck at by Murphy? Whether Murphy's conduct was proper or improper, the judge declared to be *immaterial*. In the effort made by the boy to obey his command or avoid his blow, did he act prudently? was the question. And the charge was, if the boy exhibited no want of prudence nor bad faith down to that moment, though he had made an honest mistake in supposing the large car was going down town, you may look at every circumstance affecting his subsequent conduct in determining whether, in that conduct, he was guilty of the want of reasonable care and prudence.

I cannot discover in this any error, for I cannot perceive how the jury could determine this question without a view of all such circumstances.

But the defendants' counsel insists that the verdict is against evidence. I feel at liberty to say, that it is contrary to the conclusions of my own mind, so far as such conclusions were found on the trial. And on a review of the evidence, as exhibited in the case, I am satisfied that had I been called upon to find the facts upon this evidence, I should have arrived at a different result.

But this *alone* is not a sufficient reason for ordering a new trial, and the case having been twice tried with the same finding of the jury upon the facts establishing the right of recovery, we should be very careful in the exercise of that legal discretion by which we overrule the verdict.

There is some conflict in the evidence relating to the con-

duct of the boy, and some contradiction upon the question of negligence in the driver of the up going car.

The boy is contradicted in material particulars, but his credibility was peculiarly a question for the jury. A large preponderance of evidence, I think, tends to show that the boy was a mischievous trespasser, who brought the injury upon himself by his own misconduct. His own testimony, and that alone, tends to prove him an innocent child, acting in good faith, entering upon the large car for an honest purpose, and therein making, at most, a natural and excusable mistake; if, indeed, his mistake in not knowing that the large car was not going down town when he saw it moving in that direction, needs any excuse.

In relation to the conduct of the driver of the up going car, most of the testimony, including, as I think, that of the boy himself, shows that, so far as the driver was concerned, the accident was unavoidable. That he stopped the car as soon as was possible, and that ordinary care and skill could not have prevented the injury. That the boy was behind the large car, and hidden from the driver's view until the moment of passing that car, when the boy ran directly against the horses, or platform, at the moment of passing, when, according to the evidence of the boy, the cars were so near together, that he describes the accident as a falling, as he jumped off the platform. At all events, the distance between the cars must have been exceedingly small, and the striking the horses or platform, and the passing over of the wheel are described as almost instantaneous. Yet the driver did stop so soon that one wheel only passed over the boy's ankle.

Other testimony is to the effect, that the driver " *could* " have stopped the car in time to save him from the injury, *i. e.*, it was *possible ;* and that similar cars are stopped in a less time, &c. It was argued, also, that the fact that the driver did not see the boy, warranted the inference that he was inattentive to his duty. And yet, if by the use of reasonable care and skill, he could not have avoided the accident, it is quite immaterial whether he saw the boy or not.

Under these circumstances, and after a second trial, I do not think the verdict should be set aside, because the court would, upon the evidence, have found the facts differently; nor *merely* because they deem the evidence in the defendants' favor is greatly preponderating. The precise questions upon which the jury were to pass, were very distinctly presented to the jury in the charge, and if this was the whole ground of objection to the verdict, I should feel bound to regard their finding as conclusive, notwithstanding my full conviction that the evidence, exonerating the driver from the imputation of negligence, greatly preponderated, and ought to have been quite satisfactory to an unbiased mind.

But it is further urged, that the damages are *excessive.* The disposition of this point renders the consideration of the measure of damages in such case, and the subjects which may be the ground of estimate, necessary.

The injury occurred on or about the 28th of March, 1847. The boy was then eleven or twelve years of age. He lived with his parents, and rendered them service. The evidence is, that boys get 12 shillings to $2 per week at fifteen or sixteen years of age, and may, at the carpenter's trade, earn $3 50 per week when seventeen years old.

On receiving the injury, the boy was taken to the hospital, where he received all the medical and surgical treatment which he appears to have received at all; and there is no evidence that it was the occasion of any expense to the plaintiff. The boy's leg was amputated, and he of course permanently injured. How far the loss of his foot would, or did, in fact, diminish the value of the boy's services, was left without proof to be judged of by the jury. Under these circumstances, if the father recover, he should be allowed for all reasonable expenses incurred by reason of the injury—for the value of the services of himself, his wife and servants, so far as they were rendered in taking care of the lad while suffering from the injury; and finally, for the loss of the boy's services, so far as such loss resulted from the accident.

There was no proof that the plaintiff was put to any ex-

pense whatever, and the evidence, on the contrary, indicates that whatever was done in the cure of the lad was done at the public hospital, so that nothing could be included in the verdict under this item.

The lad did undoubtedly receive the care and attention of his mother after his return home ; this was testified to : " She took me in and out of bed for three or four weeks," but, it was added, " she still went out washing," that being her employment. She also called at the hospital twice a week for six weeks, while the lad was there, and his " father called, too." This is all of the evidence, showing that by reason of the accident any services, time, or labor, were expended by the plaintiff or his family in the care of the boy. And no evidence is given to guide the jury in estimating the value of what is so indefinitely stated.

The value of the lad's services at the highest estimate of their value, while the boy was not at a trade, was $2 per week, at the more advanced age of 15 or 16.

It is to be observed, however, while it is not indispensable in such cases, that witnesses should be called to prove the value of every item which may be taken into consideration, and conceding for the purposes of the case, that in estimating the value of a parent's care and attention bestowed upon a suffering child, the painful nature of that attendance may be considered ; yet, some sufficient particulars must be given to the jury, upon which they may safely, and with a due regard to justice to the defendant, make the estimate of value which is not testified to.

And when it is further considered that the damages sustained by the child himself—his suffering—the pain and mental anguish of the parents, are to be wholly excluded in the estimate of damages ; (24 Wend. 429 ;) that the action is for indemnity merely, there being no right, in actions against the master for negligence of the servant, occasioning injury to the plaintiff's child or servant, to claim or give exemplary damages ; (4 Denio, 461 ;)—I say, when these rules are considered, it becomes quite apparent that if they have not been violated, the

jury must have given the plaintiff prospective damages, *i. e.*, damages for the probable loss of service for a period subsequent not only to the bringing of the suit, but probably subsequent to the time of the trial.

The value of the services from March to the commencement of the suit, in September, 1847, twenty-six weeks, at $2 per week, is fifty two dollars, and to suppose that the jury have allowed the residue of their verdict, about $500, for the care and attention proved to have been bestowed upon the boy, is to place the verdict upon a ground which cannot be sustained upon the evidence of their extent or value.

If the loss of the boy's services were estimated to the time of the last trial, 15th of January, 1851, 3 years and 10 months, or thereabouts, 199 weeks, the amount, at $2 per week, would be about $400, leaving $150 only to be applied to the care, attention, &c., of the plaintiff and his family. And although this is not fully sustained by a critical review of the testimony, there is probably no such excess as should require any interference with the verdict for this cause, if such prospective damages can properly be recovered in this case. And if under this declaration, a recovery could be had for probable loss of service during the minority of the child, the claim that the damages are excessive, becomes palpably groundless.

It becomes, then, in my judgment, material to inquire whether, in a case like the present, where there is no count in the declaration averring such special damages, and claiming to recover therefor, the plaintiff can recover for any thing beyond the loss of service *which* he *alleges*, viz., from the time of the injury "hitherto," *i. e.*, until the commencement of the suit. It has been, and is still by some, deemed doubtful whether in actions of this nature, there can be any recovery for prospective damages. The value of the future services of a son, contingent upon the continuance of his life, his health, his habits, the nature of his employment would be, in a very high degree, speculative, if not wholly conjectural. (See, however, on this subject, *Ford* v. *Monroe*, 20 Wend. 210, and *Pack* v. *Mayor*, &c., 3 Comstk. 489.) It is not enough that in the ac-

tion by the person injured, the jury may take into view the probable future continuance of the disability occasioned by the wrong. In such case, that forms an element in ascertaining the actual state of the body of the sufferer; it is unsound, and the degree of unsoundness, and therefore the proper indemnity to him therefor, depends upon its permanence. But in such case the jury are confined within narrow limits. (See *Lincoln* v. *The Saratoga and Sch. Rail Road Co.* 23 Wend. 425; and see cases collected and reviewed in Sedgwick on Dams. 2d ed. p. 102, and onward, and p. 551, and onward.)

Be the rule on this subject as it may, I apprehend the plaintiff in this case cannot recover for prospective or probable future loss of service, unless he has claimed therefor in his declaration. In the present case, the averment is, that the plaintiff has lost the services of his son from the time of the injury "hitherto," and that this loss of service was caused by the negligence of the defendants' servant. It is true, that he says that the injury to his son is permanent, and that was clearly proved to the extent of the loss of his limb, but he does not aver, that by reason thereof he has incurred the loss of the boy's services during the period of his minority, or in any form indicate that he claims for such loss.

It is true that, in an action by the boy himself, no such averment would be necessary, for in such an action the *injury to his person* is the *gravamen* of the action, and the damages are to be measured by the extent of that injury. Such was the case in 23 Wend. 485, above referred to.

But here, *loss* of *services* is the *gist* of the action; the *injury* to the *person* the *cause* only of the loss; and to allow the plaintiff to recover for a loss of service in nowise alleged, would be a plain violation of the familiar rule, that a plaintiff can only recover *secundum allegata.*

This is not a mere objection in point of form, to a matter of *time*, stated under a *videlicet*, but it relates to a matter *not averred at all* as a ground of claim, nor in any sense *claimed* in the declaration. That this is a material objection, is inferable from the case of *Ford* v. *Monroe*, 20 Wend. 210, above

cited, in which the claim for such probable loss of service seems to have been sustained, (though without much discussion,) *because specially* averred in the declaration. See, also, *Hodsoll* v. *Stallebrass*, 11 Adolph. & Ellis, 301, where the declaration was specially framed to cover the prospective loss of service. The language of the court, in *Whitney* v. *Hitchcock*, 4 Denio, 463, that the plaintiff cannot in any such case recover "beyond his actual loss," when it is considered in connection with the rules of pleading, imports that he cannot recover for a loss not in any form averred.

I feel clear that a verdict for such prospective loss of service cannot in this case be sustained, and that in the absence of any appropriate averment, setting forth the probable future loss, the jury were confined in estimating their damages to the loss of service before suit brought, together with a reasonable compensation by way of indemnity for the care and attention bestowed on the child during his confinement.

In this view, as already remarked, the damages are not only excessive, but almost wholly unsustained by the evidence; and although I would not interfere with a verdict upon this ground, except in a very clear case, yet entertaining the foregoing views of the law on this subject, (and which we must assume to have been correctly stated to the jury,) I deem it our duty in this case to order a new trial, believing the jury must have fixed the amount, not by the facts proved, but under the influence of sympathy, or some other motive, which could not properly influence their verdict. And the *coincidence*, that the jury have, in my judgment, rendered their verdict against the preponderance of the evidence regarding the question of negligence, as well as also upon the question of damages, seems to me to require our interference, even if on either ground *alone* we should, after a second trial, feel bound to refuse it. Such a coincidence strengthens greatly the allegation of bias, partiality, or other undue influence on the minds of the jury, and confirms an apprehension that the defendants, being a corporation, in litigation with an individual, have been convicted under some vague idea that they can better afford to pay than

the plaintiff lose, whatever may be the evidence or the law in the case before the jury.

I think a new trial should be ordered, on payment of costs, unless the plaintiff elects to reduce the verdict to two hundred dollars, in which case the motion for a new trial is denied.

Ordered accordingly.